## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMIR A. ISBELL, | : | 4:13-cv-2785 |
| | : | |
| Plaintiff, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| REBECCA WARREN, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

### August 4, 2014

Presently pending before this Court are the Motion to Dismiss, Motion for More Definite Statement, and Motion to Strike of Defendants Montour County and Susan Kauwell (Doc. 8) and the Motion to Dismiss or For a More Definite Statement of Rebecca Warren (Doc. 9).  For the reasons that follow, the Court shall grant the motions to dismiss.

## I.   FACTUAL BACKGROUND[1]

Plaintiff, Mr. Amir Isbell, filed the underlying action to challenge various aspects of an earlier-concluded criminal proceeding against him, accusing him of child abuse.  Charges were filed against Mr. Isbell after his four month-old child,

---

[1] We derive the facts of this case from the Complaint and must accept all factual allegations as true, although we need not credit any "bald assertions" or conclusions of law.  *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

A.I., was admitted to the hospital on January 7, 2010, with symptoms of

dehydration and somnolence.  (Doc. 1, ¶¶ 18, 20).  Multiple physicians examined

A.I. and performed tests including a full skeletal survey and an abdominal CT scan.

(*Id.* ¶ 21, 22, 26).  The skeletal survey found no evidence of acute fracture (*id.* ¶

22), and the initial CT scan report noted no fracture or subluxation, however an

addendum describes "subtle fractures at the anterior ends of the ribs of the fifth,

sixth, and seventh ribs bilaterally."  (*Id.* ¶¶ 26, 29).  A.I. was also observed to have

significant subdural collections and minor rib beaking.  (*Id.* ¶ 21).

In addition, doctors examined the infant's eyes.  Dr. Neutze, a third-year

ophthalmology resident, performed an undilated eye exam and was unable to

identify any retinal hemorrhaging or other abnormalities.  (*Id.* ¶ 23).  Later, A.I.'s

subdural collections were surgically drained, and the neurosurgeon noted a

"serosanguineal [sic] fluid with extremely significant pressure."  (*Id.* ¶ 27).  After

this procedure had been completed, Dr. Bellino dilated and examined A.I.'s eyes

and noted retinal hemorrhaging and retinoschisis.  (*Id.* ¶ 28).  At some point, Dr.

Wilson also examined and took images of A.I.'s eyes, and he later reported that

> The exam revealed too numerous to count retinal
> hemorrhages in both eyes involving the intraretinal layers
> of the retina.  The hemorrhages extended to the ora
> serrata but were concentrated in the posterior pole.  I also
> observed a macular retinoschisis in the right eye. . . .  It
> was my impression that the findings described above

> could only have been associated with
> acceleration/deceleration injuries seen with shaken baby
> syndrome.

(*Id.* ¶ 34).

Based on the findings indicating abuse, and without reference to the

undilated eye exam of Dr. Neutze yielding normal results, a police trooper

prepared an affidavit of probable cause against Mr. Isbell, asserting that A.I.'s

subdural collections "suggest multiple episodes of shaking" and that, "with the

retinal hemorrhages there can be no other explanation except a shaking type injury

only associated with abuse[.]" (*Id.* ¶¶ 47-48).  A warrant was issued, and Mr. Isbell

voluntarily presented himself for arrest.  (*Id.* ¶¶ 45, 50).  On March 3, 2010, a

preliminary hearing was held, probable cause was found against Mr. Isbell, and the

case was bound over for trial.  (*Id.* ¶¶ 51, 53).

In May 2010, a county children and youth services agency filed a petition

for the dependency of A.I. (*id.* ¶ 54), and Mr. Isbell requested that his criminal case

be continued during the pendency of that proceeding.  (*Id.* ¶ 65).  Approximately a

year later, on May 4, 2011, a state court of common pleas dismissed the

dependency petition and did not make a finding that A.I. had been abused.  (*Id.* ¶¶

60-61).

On August 9, 2011, Mr. Isbell forwarded to District Attorney Buehner, the

prosecutor in his criminal proceeding, the reports and curricula vitae of five experts set to testify on his behalf.  (*Id.* ¶ 66).  At a meeting on October 11, 2011, Mr. Isbell's counsel and District Attorney Buehner discussed that the government would submit expert reports by February 25, 2012, and that trial would be set for April 1, 2012.  (*Id.* ¶ 70).  Mr. Buehner also stated his intention to obtain any photos taken by Dr. Wilson during his examination of A.I.'s eyes.  (*Id.* ¶ 71).

On November 12, 2011, Mr. Isbell filed a motion to compel the production of photos generated during Dr. Wilson's examination or, in the alternative, to exclude testimony respecting the exam by Dr. Wilson.  (*Id.* ¶ 74).  The trial court conducted a telephonic conference and, later, on February 6, 2012, held a hearing on the motion to compel.  (*Id.* ¶¶ 75, 84). By the time of the hearing, Defendant Rebecca Warren had been sworn in as the Montour County District Attorney and replaced Mr. Buehner on the case.  (*Id.* ¶ 77).  Witness testimony indicated that any photos generated by Dr. Wilson either could not be located or had been destroyed. (*Id.* ¶¶ 86-88).  The trial court requested post-hearing briefing, and, on April 17, 2012, issued an order denying the motion to compel but indicating that it would consider providing a negative inference instruction to the jury regarding the missing photos.  (*Id.* ¶¶ 89, 108-09).

Meanwhile, on January 6, 2012, Mr. Isbell and his family filed a lawsuit in

this Court against Drs. Bellino and Wilson and Montour County, among others, alleging various constitutional violations and a tort claim stemming from A.I.'s diagnosis and the ensuing safety plans and dependency proceeding. *See Isbell v. Bellino*, 4:12-cv-43 (M.D. Pa.) (hereinafter, "*Isbell v. Bellino*").

With Mr. Isbell's criminal trial then set for April 2012, the government had yet to submit its expert reports, and Mr. Isbell requested a continuance. (*Id.* ¶ 106). At that time, it was the policy and/or practice of Defendants to schedule every active criminal case for a pretrial conference and trial every two months, regardless of whether outstanding issues warranted a conference or whether the parties were ready for trial. (*Id.* ¶ 101). Defendant Susan Kauwell, the county Prothonotary/Clerk of Courts, would send a notice to the defendant advising that failure to appear at the pretrial conference may result in the issuance of an arrest warrant. (*Id.* ¶ 102). If a defendant wished to request a continuance, he was required to do so by submitting a particular form, which noted the waiver of speedy trial rights. (*Id.* ¶ 104). Requests for a continuance were first submitted to Defendant Warren for her approval before being submitted to the court. (*Id.* ¶ 103).

Mr. Isbell's counsel and Defendant Warren conferred in early April and agreed that the state would submit expert reports by May 15, 2012, and that trial

would commence June 18, 2012.  (*Id.* ¶ 107).  The state requested an extension of

time to file the reports, stating that an expert had been identified but had not yet

been able to review the relevant documents and prepare a report.  (*Id.* ¶ 114).  The

trial court held a pretrial conference on May 30, 2012, and in an order issued the

same day noted that the government "will be providing [expert reports] to Defense

counsel within days of today's conference" based on Defendant Warren's

representations.  (*Id.* ¶ 115).  However, approximately five months would elapse

before the state submitted the expert report of Dr. Alex Levin.  (*Id.* ¶ 140).

During the interim period, Defendant Warren made various representations

that she had been unable to contact Dr. Levin and that Dr. Levin required

additional medical records to complete his report.  (*Id.* ¶¶ 118, 119, 121, 123).  At

one point, Defendant Warren told Mr. Isbell's counsel that cost was a factor in

failing to produce the expert submissions and that she had concern about spending

county money for experts.  (*Id.* ¶ 127).   Also, although the state expert reports had

not been filed, a docket entry on June 29, 2012, read "Commonwealth Ready to

Proceed.  It is understood by Commonwealth that continuance granted due to

Defense expert availability."  (*Id.* ¶ 120).  Mr. Isbell requested continuances on

three additional occasions.  (*Id.* ¶¶ 117, 125, 139).

On October 8, 2012, Mr. Isbell filed a motion to preclude any government

expert testimony based on the protracted delay. (*Id.* ¶ 133). Defendant Warren

responded that "the Commonwealth has encountered difficulty in securing a sole

expert opinion . . . and requires additional time in order to finalize the retention of

experts and issuance of opinions." (*Id.* ¶ 134).

Finally, on October 31, 2012, the state produced the expert report of Dr.

Levin (*Id.* ¶ 140), and, on November 9, 2012, submitted the same to Mr. Isbell's

counsel. (*Id.* ¶ 153). At that time, Defendant Warren noted her intent to secure an

additional expert. (*Id.* ¶ 154). On November 19, 2012, Mr. Isbell again submitted

a request for a continuance. (*Id.* ¶ 155).

Sometime thereafter, Mr. Isbell discovered that Defendant Warren had

previously represented Montour County in a lawsuit against the Governor of

Pennsylvania, among others. (*Id.* ¶¶ 80, 161). The complaint, filed on October 1,

2009, sought to compel the Commonwealth to pay Montour County $190,000 as

reimbursement for funding a full-time Montour County District Attorney. (*Id.* ¶

81). Defendant Warren had only withdrawn her representation on August 27,

2012, approximately eight months after becoming Montour County District

Attorney. (*Id.* ¶ 82). Based on this conflict of interest, Mr. Isbell's counsel sent

Defendant Warren a letter on February 12, 2013, asking her to recuse herself and,

also, to dismiss the criminal charges due to lack of probable cause. (*Id.* ¶ 161).

Then, on February 19, 2013, Mr. Isbell filed a motion to disqualify Defendant Warren from prosecuting the case (*id.* ¶ 163), and also filed a habeas motion to dismiss the criminal charges for lack of probable cause.  (*Id.* ¶ 164).

On March 15, 2013, Deputy Attorney General Daniel J. Dye entered his appearance on behalf of the Commonwealth, and, on April 15, 2013, Defendant Warren withdrew her appearance citing a lack of resources.  (*Id.* ¶¶ 168-69). Several months later, on October 15, 2013, Deputy Attorney General Dye filed a motion for nolle prosequi, because, "[f]ollowing an independent review . . ., [it was] determined that there is insufficient evidence to pursue prosecution."  (*Id.* ¶ 170).  The trial court signed the order, entering a nolle prosequi of all charges.  (*Id.* ¶ 172).

## II.    PROCEDURAL HISTORY

Mr. Isbell filed the instant Complaint on November 14, 2013.  (Doc. 1).  In general, he alleges violations of his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §§ 1981, 1983, and 1985.  He asserts that Defendant Warren deprived him of his constitutional rights by not recusing herself upon learning of Mr. Isbell's federal lawsuit against her private client, Montour County; failing to refer the matter to the Attorney General based on her conflict of interest as a private attorney for Montour

County; determining not to withdraw criminal charges when she knew or should have known that probable cause no longer existed; instituting a policy by which delay was counted against Mr. Isbell, in violation of his speedy trial rights, when the government was unprepared to proceed to trial; and fabricating and conspiring to fabricate evidence in the form of an expert report that had no basis in fact or the medical literature.  Mr. Isbell alleges that Defendants Warren and Kauwell violated his rights by instituting a system under which all requests for continuances be referred to Defendant Warren and submitted on forms articulating a waiver of speedy trial rights.  In addition, Mr. Isbell avers that all Defendants unconstitutionally delayed and conspired to delay his criminal trial in order to enhance the defense, retaliate against him for his federal lawsuit, and avoid incursion of costs to the County in funding expert witnesses.  In terms of damages, and as a broad articulation of his case, Mr. Isbell states that he

> seeks compensatory, punitive and other damages . . . for having to repeatedly prepare for trial and endure the criminal prosecution of an alleged crime for which no probable cause existed for over two years under the threat of possible conviction and under threat of arrest for failing to appear at multiple scheduled pre-trial conferences and multiple scheduled trial dates when Defendant Warren was in violation of [the trial court's order to produce expert reports "within days"] and was never ready to go to trial due to a lack of an expert report based on the facts of the case and the medical literature.

(Doc. 1, ¶ 191).

On January 21, 2014, Defendants Montour County and Kauwell filed a Motion to Dismiss, Motion for More Definite Statement, and Motion to Strike (Doc. 8), and Defendant Warren filed a Motion to Dismiss or For a More Definite Statement.  (Doc. 9).  The Motions have been fully briefed (Docs. 14, 15, 18, 19, 22, 25) and are thus ripe for disposition.

## III.   LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) contends that the complaint has failed to assert a claim upon which relief can be granted.  *See* FED. R. CIV. P. 12(b)(6).  In considering such motion, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). To resolve a motion to dismiss based on Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case."  *Buck v. Hampton*

*Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citations and internal quotation marks omitted).  Rule 12(b)(6) permits a court to grant a motion to dismiss if there is a dispositive issue of law.  *See Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

## IV.   DISCUSSION

At the outset, we note that Mr. Isbell's somewhat general recitation of his causes of action, coupled with an exceedingly detailed complaint spanning 192 paragraphs, have resulted in some confusion as represented in the briefs.  All of the defendants move for a more definite statement, in addition to dismissal, and argue persuasively that Mr. Isbell's pleading is "so vague or ambiguous that [they] cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  However, in view of the parties' competent efforts to address the merits and winnowing of the issues through responsive memoranda, we too will proceed to the substance of the matter.

### a.    Motion of Defendants Montour County and Kauwell

Defendants Montour County and Kauwell observe that Plaintiff's Complaint is unclear as to the precise causes of action alleged against each of the defendants. Noting this uncertainty, the defendants construe the Complaint to relevantly assert (1) a claim under 42 U.S.C. § 1983 for a deprivation of Plaintiff's Sixth Amendment right to a speedy trial against Defendants County and Kauwell; (2) a claim under 42 U.S.C. § 1985 for conspiracy to violate Plaintiff's Sixth

Amendment rights against Defendants County and Kawell; and (3) a claim against

Defendant Kauwell arising under 42 U.S.C. § 1983 for implementing a policy

requiring criminal defendants to submit requests for continuances to the District

Attorney's Office and utilizing a form that waives speedy trial rights.  As

additional arguments, the defendants assert that punitive damages may not be

awarded against municipal entities in civil rights actions, Plaintiff should be

required to submit a more definite statement as his complaint is unreasonably

ambiguous, and multiple paragraphs of the complaints should be stricken as

irrelevant.

### 1.      Unconstitutional delay of trial

As stated, in their opening brief, the defendants presume that Mr. Isbell

advances a claim under 42 U.S.C. § 1983 for a deprivation of his Sixth

Amendment right to a speedy trial.  In this regard, the defendants argue that

Plaintiff cannot pursue a § 1983 claim for violation of his speedy trial rights

because the charges were abandoned, and he never actually proceeded to trial.  In

any event and as a general matter, the defendants assert that monetary damages are

not appropriate to remedy a violation of speedy trial rights and that the only

possible remedy is the dismissal of charges.

In his brief in opposition, however, Mr. Isbell appears to claim a due process

violation, arguing that the defendants had ulterior motives to prolong his criminal action in violation of his due process rights.

Focusing on the due process claim, the defendants note in their reply that Mr. Isbell does not specify whether he is asserting a procedural or substantive claim but argue that either would fail.  As to procedural due process, they contend that Mr. Isbell has not shown that he was deprived of a protected interest without the opportunity to be heard.  They observe that the prosecution progressed according to usual procedure and was presided over by a judicial officer, and that, inasmuch as Mr. Isbell argues that he was compelled to file continuances based on the government's alleged unreadiness to proceed, he "simply could have foregone requesting those continuances and forced Defendant Warren to proceed with the prosecution."  (Doc. 22, p. 8).  Turning to substantive due process, the defendants aver that the Complaint fails to advance that any alleged deprivation perpetrated by the defendants shocks the conscience.  *See United Artist Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392, 400 (3d Cir. 2003).  As an additional argument, Defendant County poses that Mr. Isbell has failed to show that it is liable under § 1983 because he has not demonstrated that the County acted "deliberately" and was the "moving force" behind the alleged injury.  *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997).

Mr. Isbell argues that it would be reasonable to infer that the Montour County Commissioners' funding considerations were the "moving force" behind the County's delay in procuring expert testimony and, also, that the County was motivated to prolong the criminal proceeding as a defense strategy to the civil rights action filed by Mr. Isbell against the County and others in *Isbell v. Bellino*.[2] As to the multiple continuances filed by him, he maintains that he "was required to submit . . . request[s] for continuance on Defendant Warren's form with boilerplate language that [he] was waiving his right to a speedy trial in order to avoid the court issuing an arrest warrant for failing to appear for a pre-trial conference where Defendant Warren would represent she was not ready to proceed to trial."  (Doc. 1, ¶ 125).  Mr. Isbell asserts that as of February 6, 2012, when it was revealed that the retinal photos taken by Dr. Wilson no longer existed, there was no longer probable cause underpinning the criminal charges against him, and the "County denied [him] his due process by delaying the dismissal of criminal charges that lacked probable cause."  (Doc. 18, p. 5); (*see also* Doc. 18, p. 8 ("Defendant Montour County's funding decisions to ensure the continuation of criminal charges in the

---

[2] Mr. Isbell elaborates that "[a] reasonable inference is that Defendant Montour County was funding prosecution expert witnesses as a defense strategy to [*Isbell v. Bellino*].  Once Montour County was not dismissed from [that case], then, and only the, were they willing to fund prosecution witnesses to prolong the criminal charges with the hope that Montour County would prevail on a motion for Summary Judgment in [*Isbell v. Bellino*]."  (Doc. 18, p. 6).

face of a lack of probable cause for the purpose of defending a civil case is a violation of [Mr. Isbell's] right to due process."). This section of his brief includes only one citation, referencing a concurring opinion in *Barker v. Wingo*, 407 U.S. 514, 537 (1972) (White, J., concurring), which discusses the Sixth Amendment right to a speedy trial.

Mr. Isbell's claim is without merit.

First, to the extent Mr. Isbell's argument is predicated on the failure to dismiss his case when probable cause was allegedly lacking or any other prosecutorial decision, his assertions are misdirected toward Defendants County and Kauwell, and we will address them as to Defendant Warren. It is well established in Pennsylvania that district attorneys have broad discretionary authority to determine whether prosecutions shall be commenced or maintained, and, by corollary, the county defendants here would lack such power. *See Commonwealth v. DiPasquale*, 246 A.2d 430, 432 (Pa. 1968) ("A District Attorney has a general and widely recognized power to conduct criminal litigation and prosecutions on behalf of the Commonwealth, and to decide whether and when to prosecute, and whether and when to continue or discontinue a case.") (citation omitted).

Second, to the extent Mr. Isbell is asserting a deprivation of his right to a

speedy trial, we cannot ignore that it was Mr. Isbell by his own action who continually requested continuances in his criminal proceeding. Mr. Isbell's argument that he was compelled to request continuances (or risk arrest) because the state was unprepared to proceed to trial is far from convincing; Mr. Isbell could have taken no action, attended the scheduled pretrial conferences, and allowed the state to either request a continuance or proceed to trial. Instead, the Complaint shows that he requested multiple continuances and never asserted his right to a speedy trial.[3] *See U.S. v. Battis*, 589 F.3d 673, 681 (3d Cir. 2009) ("[F]ailure to assert the right [to a speedy trial] will make it difficult for a defendant to prove that he was denied a speedy trial." (quoting *Barker*, 407 U.S. at 531-32) (internal quotation marks omitted)). In addition, it is significant that his case never proceeded to trial. A number of courts have held that a plaintiff whose charges were dismissed or abandoned cannot assert a § 1983 challenge based on a speedy trial violation. *See Posey v. Swissvale Borough*, No. 2:12-cv-955, 2013 WL 989953, *12 (W.D. Pa. March 13, 2013) (collecting cases). As well, it is far from certain that damages are available for a deprivation of speedy trial rights. *See id.*

---

[3] Mr. Isbell urges us to infer that there is something nefarious in a system that: (1) compels presentation of continuance forms to the district attorney; and (2) utilizes continuance forms wherein requesting defendants must waive their speedy trial rights. In fact, both of these protocols are almost universally used in criminal prosecutions and are hardly unique to either this case or Montour County.

16

(collecting cases).

Third, to the extent Mr. Isbell asserts a substantive due process claim, he must prove that the particular interest in issue is protected by substantive due process principles and that the government's deprivation of that interest shocks the conscience.  *See Chainey v. Street*, 523 F.3d 200, 220 (3d Cir. 2008) (citing *United Artists*, 316 F.3d at 400-02).  Although he does not specify, presumably Mr. Isbell is asserting a denial of his due process right to a speedy trial, which is a fundamental right protected by the Due Process Clause of the Fourteenth Amendment.  *See Barker*, 407 U.S. at 515.  However, as discussed, we cannot say that the county defendants deprived Mr. Isbell of his right to a speedy trial where he affirmatively filed multiple continuances.  Even assuming that Mr. Isbell suffered a constitutional deprivation, Mr. Isbell asserts no facts indicating that the county defendants' actions meet the "shocks the conscience" standard, which subsumes "only the most egregious official conduct."  *United Artists*, 316 F.3d at 400 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)) (internal quotation marks omitted).

Fourth, inasmuch as Mr. Isbell claims a deprivation of his procedural due process rights, he must show that (1) the asserted individual interests are protected by the Fourteenth Amendment, and (2) the procedures available failed to provide

the him with due process of law.  *See Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir.

2000).  "The fundamental requirement of due process is the opportunity to be heard

at a meaningful time and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S.

319, 333 (1976) (internal quotation marks and citation omitted).  Again, even

assuming that Mr. Isbell suffered a constitutional deprivation, he could have

availed himself of the process afforded by the court, demanding a more immediate

trial date rather than submitting multiple motions to continue.  *See*, *e.g.*, *Alvin*, 227

F.3d at 116 ("[A] state cannot be held to have violated due process requirements

when it has made procedural protection available and the plaintiff has simply

refused to avail himself of them.") (citation and internal quotation marks omitted).

In sum, Mr. Isbell has not shown, in terms of the alleged delay in the

criminal proceeding against him, that he suffered a constitutional deprivation

attributable to either Defendant County or Kauwell.

## 2.    Conspiracy to delay trial

As to Mr. Isbell's claim that Defendants conspired to deprive him of his

speedy trial and/or due process rights, the defendants argue that Plaintiff has failed

to state particularized allegations of conspiracy and to show that the defendants

acted with discriminatory animus towards him.  Mr. Isbell responds merely that

"[a]t the motion to dismiss stage of this matter, Plaintiffs [sic] have no evidence of

racial animus as the motivation for Defendant's [sic] violations of Plaintiff's right to due process." (Doc. 18, p. 18).

To establish a cause of action under 42 U.S.C. § 1985(3), conspiracy to deprive persons of rights or privileges, a plaintiff must allege: (1) a conspiracy; (2) prompted by racial or class-based discriminatory animus designed to deprive him, directly or indirectly, of the equal protection of the law; (3) an act in furtherance of the conspiracy; and (4) an injury or the deprivation of any right or privilege of a United States citizen. *See Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997). As discussed *supra*, Mr. Isbell has failed to articulate a deprivation of his speedy trial or due process rights, and accordingly, his conspiracy claim also must fail. Furthermore, the Complaint articulates no facts suggesting that any alleged deprivations of Mr. Isbell's rights were motivated by racial or class-based discriminatory animus, which presents additional grounds for dismissal of this claim.

### 3.    Policy respecting continuance requests

To the extent any policy regarding the filing of continuances deprived Mr. Isbell of his constitutional rights, Defendant Kauwell argues that she is entitled to quasi-judicial immunity and/or qualified immunity.

Mr. Isbell describes the general procedure employed by the office of the

Prothonotary/Clerk of Courts regarding continuances, and argues that Defendant

Kauwell aided in implementing it. As to immunity, Mr. Isbell argues that

Defendant Kauwell is not a judicial officer but an officer of the county, and that, as

an officer of the county, her actions are imputable to the county.

Judicial immunity – that is, absolute immunity from suit – has been extended

to clerks and prothonotaries where the acts performed by the individuals were

judicial in nature and integral to the judicial process. *See Grine v. Colburn's Air

Conditioning & Refrig.*, No. 09-11, 2009 WL 2634179, at *9 (W.D. Pa. Aug. 25,

2009) (improper decision-making regarding fabricating or causing a false record to

be transmitted or maintained, improperly enforcing a court order, improperly

enforcing rules of procedure, and of failing to report a judge's behavior to a court

administrator); *Hurst v. City of Dover*, No. 04-083, 2009 WL 364667, at *12-13

(D. Del. Feb. 13, 2009) (fabricating a court document and falsely representing that

a transcript had been filed). *See generally Waits v. McGowan*, 516 F.2d 203, 206

(3d Cir. 1975). Here, the allegations against Defendant Kauwell regard her

treatment of requests for continuances. This function is integral to the judicial

process and thus protected by judicial immunity.

### b. Motion of Defendant Warren

Defendant Warren primarily argues that she is entitled to prosecutorial

immunity, rendering her absolutely immune from suit.

Mr. Isbell counters that Defendant Warren is not protected by prosecutorial immunity because she continued to prosecute him after she knew or should have known that probable cause no longer existed.  He claims that after the evidentiary hearing of February 6, 2012, at which testimony indicated that no photos of A.I.'s eyes existed, "Defendant Warren was not prosecuting the case, but rather was investigating the lack of evidence of abnormal eye findings prior to neurosurgery." (Doc. 19, pp. 6-7).  In support, Mr. Isbell cites *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993), in which the Supreme Court held that a prosecutor acting as an investigator in attempting to develop probable cause did not enjoy absolute immunity.  In addition, Mr. Isbell argues that Defendant Warren's failure to recuse herself, despite her apparent conflict of interest as a private attorney for Montour County, violated his due process rights.  Also, Mr. Isbell argues at length that the government's expert report was obtained from a "biased and disgraced" expert and based on a controversial medical theory, and Defendant Warren should have known that the report's basis was false.  (Doc. 19, pp. 10-11).

It is well-established that prosecutors enjoy absolute immunity under § 1983 for activities "intimately associated with the judicial phase of the criminal process."  *See generally Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).  For

example, absolute immunity applies to a prosecutor's function in initiating a criminal proceeding and presenting the state's case, including evaluating evidence and interviewing witnesses. *See Buckley*, 509 U.S. at 272-73. However, a prosecutor is entitled only to qualified immunity where she acts as an administrator or investigator rather than an officer of the court. *See Buckley*, 509 U.S. at 273 (citing *Imbler*, 424 U.S. at 431, n.33).

Here, Mr. Isbell's challenges against Defendant Warren are all directed at her "role as advocate for the State," and with regard to this conduct, she is immune from suit. *Burns v. Reed*, 500 U.S. 478, 491 (1991) (quoting *Imbler*, 424 U.S. at 430-31) (internal quotation marks omitted). The presentation of an expert witness opinion is "intimately associated with the judicial phase of the criminal process," *id.* (quoting *Imbler*, 424 U.S. at 430) (internal quotation marks omitted), even though the opinion may be based on a disputed medical hypothesis. In terms of Mr. Isbell's argument premised on an alleged lack of probable cause, his efforts to analogize to *Buckley v. Fitzsimmons* are unconvincing. That photographic evidence was not available may have weakened the state's case, as shown by Judge James' offer to provide an adverse inference jury instruction, but it did not stamp out probable cause as Mr. Isbell appears to believe; for instance, the prosecution still could have proffered witness testimony to prove the existence of retinal

hemorrhaging and its cause.  Further, Mr. Isbell's own submissions illuminate the conflicts in the medical evidence and expert testimony as to the nature of A.I.'s injuries, supporting the propriety of maintaining the criminal prosecution. Defendant Warren's preparation for trial, including the submission of an expert report, was well within her prosecutorial function and was not "investigatory" as Mr. Isbell claims.  As to Defendant Warren's alleged conflict of interest, "we reject [Mr. Isbell's] contention that when a conflict of interest motivation is present it transforms otherwise immune conduct into acts taken outside of the prosecutor's jurisdiction."  *Payson v. Ryan*, No. 90-1873, 1992 WL 111341, at *5 (E.D. Pa. May 14, 1992).  In all events, any conflict was cured when the matter was referred to the Office of the Attorney General, *see Commonwealth v. Breighner*, 684 A.2d 143, 148 (Pa. Super. 1996) (*en banc*), and, as previously discussed, we cannot say that Mr. Isbell was prejudiced or suffered a constitutional deprivation in the interim.[4]

## V.   CONCLUSION

For the reasons discussed above, the motions to dismiss shall be granted.

---

[4]  We pause briefly to observe that Mr. Isbell's submissions are rife with bald assertions, ungrounded in fact.  By way of example, with no genuine evidentiary basis,  he suggests that Defendant Warren obtained the signature stamp of the trial judge in the underlying matter and tampered with court filings.  (Doc. 18, p. 13).  We admonish Mr. Isbell for all such baseless and objectionable speculation and strongly remind him that not all inferences imaginable are reasonable.

Based on the dismissal on the merits, the motions for a more definite statement and to strike shall be denied as moot.

An appropriate order shall issue.